UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARIA FARMER,

       Plaintiff,

  v.

UNITED STATES OF AMERICA,

       Defendant.

Civil Action No. 25-1709 (RBW)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
RESPONSE TO THE COURT'S JULY 1, 2025, SHOW CAUSE ORDER**

**INTRODUCTION**

Defendant the United States of America, through undersigned counsel, files this response in accordance with the Court's July 1, 2025, Order to Show Cause issued to Plaintiff Maria Farmer to explain why venue is proper in this judicial district.[1] *See* July 1, 2025, Min. Order; *see also* Pl.'s Resp. Show Cause (ECF No. 8). This is an action brought under the Federal Tort Claims Act ("FTCA") alleging negligent investigation and negligent infliction of emotional distress stemming from the Federal Bureau of Investigation ("FBI") and Department of Justice's ("Department") actions (or purported lack thereof) with respect to Jeffrey Epstein and his sex trafficking scheme. *See generally* Compl. In short, for the same reasons that this Court concluded that venue was improper in a companion litigation recently transferred to the Southern District of Florida, *Jane Doe 1 et al. v. United States* (*"Does I"*), Civ. A. No. 24-2743 (RBW) (D.D.C. 2024), the same result is warranted here. Most of the acts or omissions alleged in this case did not occur in this judicial district, and even if some tangential decisions were made by the Department of Justice in Washington, D.C., a substantial part of the acts or omissions did not occur here. Moreover, even if the Court concludes that venue may be proper in this District, the Court should nevertheless transfer the case to the Southern District of Florida, as this case raises overlapping questions of fact and law that should be decided in tandem with *Does I*. As Plaintiff concedes, this action is "related" to *Does I* (*see* May 29, 2025, Not. Related Case, ECF No. 3). To avoid burdening the United States with cumulative litigation, streamline the filing of dispositive motions or any

---

[1] The United States responds here only to the arguments raised in Plaintiff's response to the show cause order, but notes that it reserves its right to file a dispositive motion under Federal Rule of Civil Procedure 12 should the Court find that Plaintiff has adequately alleged facts to support venue. There are other grounds upon which the United States would move to dismiss at the pleading stage, and this response should not be construed as a waiver of those defenses. *See* July 1, 2025, Min. Order (noting that "all deadlines in this case are held in abeyance pending the Court's venue determination.").

discovery should the case proceed that far, for the convenience of the witnesses and parties, to avoid potentially prejudicing the United States with incompatible or inconsistent rulings, and in the interests of justice, this Court should transfer this action to the Southern District of Florida so that this case can be litigated in conjunction with *Does I*.

## BACKGROUND

Plaintiff brings this action alleging two counts under the FTCA arising from the FBI's negligence for allegedly failing to adequately investigate her tips of criminal conduct against Epstein in 1996 and 2006 (Compl. ¶¶ 304-318) and negligent infliction of emotional distress arising from the FBI's purported failures, *id*. ¶¶ 319-325. The United States recounts the pertinent facts from Plaintiff's Complaint below only for purposes of responding to the questions raised in the Court's July 1, 2025, Order to Show Cause (ECF No. 7).

On August 29, 1996, Plaintiff reported to the New York Police Department that she had been sexually assaulted by Epstein and his co-conspirator. Compl. ¶¶ 2, 112. The NYPD suggested that Plaintiff contact the FBI. *Id*. ¶ Subsequently, Plaintiff called the FBI. Although Plaintiff reported Epstein to a local field office in New York, she is unsure of whether she ever spoke to anyone in Washington, D.C. *Id*. ¶¶ 117; *id*. n. 18. In addition to her claim of sexual assault, Plaintiff also purportedly informed the FBI that Epstein had stolen nude and partially nude images of her two minor sisters, had transported those images across state lines, and that Epstein and others were "engaging in the possession, production, and distribution of sexually lascivious or exploitative images of children." *Id*. ¶¶ 3-5. Mid phone call, the FBI "hung up" on Plaintiff and did not call her back. *Id*. ¶¶ 121-122.

In March 2005, a fourteen-year-old girl and her parents reported Epstein to the Palm Beach Police Department for sexual assault and solicitation. Compl. ¶ 162. In 2006, the Palm Beach Police Department reported Epstein to the FBI. *Id*. ¶169.

The FBI investigation identified approximately thirty victims, including approximately twenty victims ages 14 to 17, who Epstein had sexually assaulted. *Id*. ¶ 174. In 2006, FBI agents arrived unannounced at Plaintiff's home in North Carolina. *Id*. ¶ 176. The agents advised Plaintiff that they knew that she had previously complained to the FBI about Epstein. *Id*. The agents met with Plaintiff for several hours, and during that conversation, Plaintiff contends that she recounted the sexual assault she suffered at the hands of Epstein, the removal of explicit images of minors, child pornography, Epstein's recording devices, among other things. *Id*. ¶ 180-185.

The U.S. Attorney's Office for the Southern District of Florida subsequently began its investigation of the case which culminated in the execution of a non-prosecution agreement with Epstein on September 24, 2007. *See id*. ¶¶ 13, 218. On February 28, 2008, the U.S. Attorney's Office for the Southern District of Florida informed the Department's Civil Rights Division of its agreement with Epstein. *Id*. ¶ 218. In a 2020 report by the Department's Office of Professional Responsibility, the report outlined numerous missteps by the U.S. Attorney's Office in its handling of the Epstein investigation and execution of the non-prosecution agreement, but did not find professional misconduct by the relevant individuals involved. Compl. ¶ 287.

In 2019, the U.S. Attorney's Office for the Southern District of New York indicted Epstein and his co-conspirator. *Id*. ¶ 279. Epstein subsequently died by suicide while in custody. *Id*. ¶ 159.

By letter dated May 2, 2023, Plaintiff wrote to the Department and "urged" it investigate its conduct regarding Plaintiff's report to the FBI and law enforcement's handling of Epstein. Compl. ¶ 21. By letter dated May 11, 2023, Plaintiff contends that the Inspector General

4

acknowledged that Plaintiff's allegations were "concerning," and "thank[ed] [counsel] for giving us the opportunity to review your client's concerns." *Id*. By letter dated December 2, 2024, the Office of Inspector General notified Plaintiff, "[A]though an internal affairs investigation was not initiated, [Internal Affairs Section] mandated action be [sic] taken to address the concerns raised in your complaint." *Id*. ¶ 21. The Department then informed Plaintiff that "IAS/IPU [Internal Affairs Section/Initial Processing Unit] considers your complaint addressed." *Id*.

On May 29, 2025, Plaintiff initiated the instant action. ECF No. 1. On July 1, 2025, the Court *sua sponte* issued Plaintiff an order to show cause as to "why the Court should not transfer this case to the Southern District of New York, given the Court's recent conclusion in the related case of *Jane Doe 1, et al. v. United States*, Civ. Action No. 24-2743, that the venue in that case was not proper in the District of Columbia." The Court's transfer of *Does I* was to the Southern District of Florida (and not New York). Plaintiff timely responded on July 14, 2025 (ECF No. 8), and the United States now files this response.

## ARGUMENT

### I.  Plaintiff Does Not Reside Here and a Substantial Part of the Acts or Omissions Giving Rise to Her Claims Occurred Elsewhere

Plaintiff attempts to justify venue in this district by alleging that approximately thirty years ago, she contacted the FBI's New York field office to report Epstein (Pl.'s Resp. at 3), suggests that maybe this report made its way to Washington, D.C., and that the FBI in Washington, D.C. was tangentially involved in a subsequent search for records relating to Plaintiff (*id*. at 4) because the FBI's central records system resides here. Simply put, these barebones allegations are insufficient to establish that venue is proper here under the FTCA. Notably, Plaintiff's Complaint does not allege that she called the Washington, D.C. Field Office to file a report regarding Epstein, or otherwise state in non-conclusory terms that the Washington, D.C. Field Office was involved

in investigating claims relating to Epstein. *See* Compl. ¶ 2 (stating that Plaintiff contacted the FBI in 1996 but failing to identify the Washington, D.C. Field Office with specificity); *id*. at 23 n.18 (noting that prior to 2003, calls within New York City did not require using an area code, and thus stating based on her own speculation that Plaintiff "may well have contacted the FBI in Washington, D.C, rather than just a local New York field office"). For these reasons, the Court should *sua sponte* transfer this case to the Southern District of Florida and stay the United States's response deadline until twenty-one days after the action has been docketed in the Southern District of Florida.

Proper venue for an FTCA claim is "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b); *see also Wilson v. Obama*, 770 F. Supp. 2d 188, 192 (D.D.C. 2011); *Williams v. United States*, 932 F. Supp. 357, 363 (D.D.C. 1996); *Powell v. United States*, No. 22-5275, 2023 WL 4992816, at *1 (D.C. Cir. Aug. 3, 2023) (quoting 28 U.S.C. § 1402(b)); *see also Smith v. United States*, 507 U.S. 197, 202 (1993). Under this provision, venue is proper "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." This District does not fall into either category.

First, Plaintiff does not allege that she resides here. The Complaint, though failing to contain her address, lacks any meaningful allegation that Plaintiff resides in this District. *See generally* Compl. In addition, Plaintiff's motion for leave to file her address under seal confirms that she does not, in fact, reside in this district. *See* Pl.'s Mot. for Leave to File Address Under Seal (ECF No. 3).[2] Because Plaintiff seemingly does not reside here, that leaves only the second prong of the FTCA's venue provision, the acts or omissions giving rise to the action, at issue. The D.C.

---

[2] A copy of this motion and its supporting exhibits were provided to undersigned counsel for the United States by counsel for Plaintiff on July 24, 2025.

6

Circuit has interpreted this provision to mean the location in which a "substantial part of the events or omissions giving rise to the claim occurred," *Cameron v. Thornburgh*, 983 F.2d 253 (D.C. Cir. 1993). Here, the District of Columbia is not it.

"Under the prevailing interpretation of section 1402(b), venue is proper in the District of Columbia if sufficient activities giving rise to plaintiff's cause of action took place here." *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984). The location of the FBI's (or the Department's) headquarters office alone "cannot constitute a basis for concluding that venue is appropriate in this [d]istrict," *Bartel v. FAA*, 617 F. Supp. 190, 199 (D.D.C. 1985), and the "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative" of the question of venue. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002); *Patel v. Phillips*, 933 F. Supp. 2d 153, 165 (D.D.C. 2013) (same); *see also Cameron*, 983 F.2d at 256 (cautioning that "[c]ourts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia."). Further, "when conduct occurs in one district but has intended effects in another, 'the act 'occurs' in the jurisdiction where its effects are directed.'" *Sanchez v. United States*, 600 F. Supp. 2d 19, 21 (D.D.C. 2009); *Reuber v. United States*, 750 F.2d 1039, 1047 (D.C. Cir. 1985), *rev'd on other grounds, Kauffman v. Anglo-Am. Sch. of Sofia*, 28 F.3d 1223 (D.C. Cir. 1994); *Attkisson v. Holder*, 241 F. Supp. 3d 207, 212-213 (D.D.C. 2017).

Here, Plaintiff has not alleged "sufficient activities" occurring in this District to render venue proper under the FTCA. The Complaint states that "[v]enue is proper in the United States District Court for the District of Columbia pursuant to 28 USC § 1391(b)(1) because the Defendant resides in this District, and there are several connections between the Defendant and the District,

such as the in-District apparent knowledge of Maria's 1996 complaint, location of the Civil Rights Division, and location of the Child Exploitation and Obscenity Section." Compl. ¶ 31. Defendant's "residence" in this District is of no moment under the FTCA's venue provisions, and the other allegations asserted in this paragraph are far too tenuous to support a conclusion that these were "substantial acts" giving rise to Plaintiff's claims.

Even if the Court assumes the well-pled allegations as true, Plaintiff's purported nexus to this District (as explained in her response to the Court's show cause order and the Complaint) is as follows:

> i) Approximately thirty years ago, Plaintiff reported Epstein to the New York City Police Department, which referred her to the FBI; thereinafter she made a complaint to the FBI but does not specifically allege that she spoke to anyone in Washington, D.C. and there is no allegation that the Washington, D.C. field office fielded the complaint (Compl. ¶¶ 112, 113, 117-118);[3]
>
> ii) Ten years later in 2005, the U.S. Attorney's Office in Florida began an investigation into Epstein relating to allegations of sex trafficking, which, in Plaintiff's telling, mandated notice to the Department of Justice's Office of Civil Rights in Washington, D.C., but which allegedly did not occur (Compl. ¶¶ 201-202, 214);
>
> iii) In 2006, the FBI reached out to Plaintiff, acknowledging Plaintiff's previous report to the FBI, and "in order to locate [Plaintiff], it appears that the FBI must have searched its records, which were presumably centralized in or organized in Washington, D.C." (Pl.'s Resp. at 4);
>
> iv) Once Epstein's non-prosecution agreement was reached, he reached out to the Department of Justice in Washington, D.C., regarding its terms, with the Deputy Attorney General purportedly conducting a review of the matter (Compl. ¶¶ 287-288);

---

[3]  Plaintiff alleges that it is "not known what the FBI in New York or Washington, D.C. did regarding [Plaintiff's] complaint regarding Epstein's pornography." Pl.'s Resp. at 3. Because Plaintiff bears the burden of establishing venue, that Plaintiff does not "know" fails to support an inference that Washington, D.C. has a nexus to the challenged act. *See Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) ("Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper.").

  v) In December 2024, the Department's OIG issued a letter to Plaintiff noting that "IAS/IPU [Internal Affairs Section/Initial Processing Unit] considers your complaint addressed" (Compl. ¶ 21);

  vi) In 2025, the U.S. Attorney General announced that Epstein evidence would be relocated to Washington, D.C. (Pl.'s Resp. at 5).

This is the sum and substance of Plaintiff's ties to Washington, D.C., and these mere allegations of limited involvement, if any, by the FBI or the Department over the course of the last thirty-years, does not give rise to a plausible inference that a "substantial part" of the acts or omissions occurred in this District. Indeed, Plaintiff's allegation that the FBI "must" have searched its centralized records to find her address in North Carolina is akin to arguing that venue is proper because the FBI is headquartered here—an argument this Court recently rejected in an analogous circumstance. Plaintiff cites to paragraph 176 of the Complaint in support of this contention, but paragraph 176 does not say anything about a centralized records system. Rather, it indicates that in 2006 the FBI went to visit Plaintiff in North Carolina. *See* Compl. ¶ 176. There is no reasonable inference that any act or omission occurred in Washington, D.C. with respect to this allegation. Even the broadest reading of the applicable caselaw does not support such a sweeping proposition.

  Even were substantial decisions alleged to have occurred here (they are not), this Court has not hesitated to find venue improper in the District of Columbia in analogous cases where the intended effect was felt elsewhere. For example, even if officials at the FBI or the Department of Justice headquarters office may have participated in or made the decision to direct (or not) the contours of the FBI's investigation in Miami or New York, the effects of that decision plainly did not occur in this district. *See, e.g., Zakiya v. United States*, 267 F. Supp. 2d 47, 58 (D.D.C. 2003) (finding that, where prisoner plaintiff mounted "a specific attack on the implementation of [a Bureau of Prisons] policy to his particular situation, and as the actual implementation by the [Bureau of Prisons] officials occurred at the facilities where he was incarcerated and not in this

9

district, venue is not appropriate" in the District of Columbia); *Spotts v. United States*, 562 F. Supp. 2d 46, 53 (D.D.C. 2008) (rejecting argument for venue in this district that "while the alleged tortious conduct had its operative effect on inmates in USP Beaumont, the negligent acts or omissions that caused the inmates' injuries—i.e., the decisions to keep them at USP Beaumont during Hurricane Rita and regarding their care after the hurricane—occurred at the Central Office [in Washington, D.C.]"). Here, the effects of that hypothetical decision would have been felt in Palm Beach, where Epstein resided, as that is where the Palm Beach Police Department conducted its investigation, where the FBI's Miami and Palm Beach Field Offices became involved, in New York, where Plaintiff resided at the time she made her original complaint, and the U.S. Attorney's Office in Florida that took the lead on an investigation and the subsequent non-prosecution agreement that formed the basis for higher internal review. *See* Compl. Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, nothing aside from unsupported legal conclusions support venue in this judicial district. This renders the District of Columbia the improper venue for this action.

Plaintiff alleges that the Department of Justice, recently within the last year, referred action from the Office of the Inspector General ("OIG"), and that files relating to Epstein were transported to Washington, D.C. Pl.'s Resp. at 5. But none of these actions, including the acts purporting to occur most recently, form the basis for Plaintiff's complaint of negligence against the FBI. To the extent Plaintiff advances an argument that venue is proper due to recent events occurring in the District of Columbia, they are misguided and irrelevant. The gravamen of this case, much like the gravamen of *Does I*, is that the FBI in Miami and Palm Beach, Florida, failed to adequately assess tips during their investigation, and failed to notify other relevant components of the Department. The Department's purported failure to notify the Civil Rights Division or other components of the

Department all flow from acts that originated in Florida. Acts occurring more than ten years later (if not more) have no bearing on the underlying claims of negligence. Indeed, Plaintiff does not allege that the decision to transfer evidence to Washington, D.C. was somehow negligent under the FTCA.

Plaintiff's reliance on *Franz*, 591 F. Supp. 374, is misplaced. Pl.'s Resp. at 7. There, plaintiff filed a complaint on behalf of himself and as parent and natural guardian of his children, who had been placed in the Witness Protection Program following Franz's divorce from his ex-spouse. 591 F. Supp. at 375. Franz alleged that he was not made aware of the decision to place the children into the program, and there was evidence in the record that the ultimate decision was rendered by officials in the Department of Justice in Washington, D.C. *id*. at 378. Franz brought suit against numerous officials, including under the FTCA. In rejecting an argument that venue was improper, the district court noted that the "readily apparent that the role of the Department [] in the sum total of events which resulted in this lawsuit was not insubstantial," because the Department "retained overall responsibility for the administration of the Program's witness protection and maintenance policies," *id*., a portion of this authority was exercised by the Department's Office of Enforcement Operations, and the "decision to place the Franz children in the Program was made exclusively by Justice Department officials in Washington, D.C." *Id*. The facts here do not resemble *Franz*; there is a dearth of allegations that senior officials made or directed decisions regarding the Epstein investigation or subsequent prosecution, and there is no plausible allegation that officials in Washington, D.C. directed FBI agents in other jurisdictions to ignore or fail to follow up on credible tips of criminal activity. Simply put, *Franz* is not analogous.

Finally, Plaintiff makes a last-ditch attempt to distance this case from *Does I*, notwithstanding that Plaintiff noticed this case as related to *Does I* in May when this case was

11

filed. *See* Not. Related Case (ECF No. 2). Plaintiff now claims that the operative complaint in *Does I* did not establish a nexus in the same way as the underlying complaint in this action because it lacked a "personal connection" to Washington, D.C. and because the complaint here alleges "greater factual and legal participation and connections to and oversight by Washington, D.C." Pl.'s Resp. at 11. Not so. The Complaint here does little more than what the Court found insufficient in *Does I*: it attempts to tie discrete acts by senior ranking officials, if they could even be construed as much, over the course of an almost thirty-year period to this District to manufacture venue. The allegations in the Complaint are far too tenuous to establish any substantial action on behalf of the Department here that give rise to Plaintiff's negligence claims. This Court expressed concern in *Does I* that a plaintiff would always be able to establish venue here if they simply alleged that a high ranking official in Washington, D.C. participated in some aspect of the decision-making process during the life of a challenged action. The Court in *Does I* did not find that sufficient and for good reason; "mere involvement" of high-ranking officials does not give rise to a finding that substantial acts occurred here. While Plaintiff attempts to attribute a much greater role to officials in Washington, D.C., removing the Complaint's conclusory and speculative allegations leaves little nexus to Washington, D.C. The crux of the claims here, much like *Does I*, involve conduct that occurred in Florida. The Court should accordingly follow the same course of action as *Does I* and find that venue is lacking here.

## II.     The Court Should Transfer This Case to the Southern District of Florida

Even if the Court finds that venue is proper here, for the convenience of the parties, the Southern District of Florida, and not the District of Columbia, appears to be a more suitable venue. Although lack of venue is a sufficient reason for the Court to dismiss claims, the Court is permitted to instead exercise its discretion to transfer those claims to an appropriate district. 28 U.S.C. § 1406(a) (2006) (providing district courts with authority to transfer on the grounds of improper venue); *see also Shipley v. Bureau of Prisons*, 729 F. Supp. 2d 272, 275 (D.D.C.2010) (transferring case for lack of venue).

While courts should give deference to a plaintiff's choice of forum, this deference is weakened if plaintiff is not a resident of the forum or if another "jurisdiction has the stronger factual nexus." *Peter B. v. CIA*, 620 F.Supp.2d 58, 66 (D.D.C. 2009), quoting *Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 102 (D.D.C. 2009) (cleaned up). That is the case here.

"Courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Williams v. City of New York*, Civ. A. No. 03-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (citing cases). Indeed, "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that: (1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the [same] time serving the public interest; [and] (4) inconsistent results can be avoided." *Richardson v. City of New York*, 87 Civ. 214 (RR), 1988 WL 156324, at *4 (S.D.N.Y. Oct. 14, 1988) (cleaned up). The interests of justice would be best served by transferring this matter to the Southern District of Florida, where most (if not all) of the actions giving rise to Plaintiff's claims occurred, most witnesses and parties are located, and where there is already a case that Plaintiff

13

herself has conceded is related. Transfer of this action would not hinder trial efficiency and the interests of justice because this case is in the early stages of litigation. *See Dickerson v. Novartis Corporation*, 315 F.R.D. 18, 32-33 (S.D.N.Y. 2016) (granting motion to transfer where "the case remains in the early stages of litigation" and "there has not yet been a significant investment by the Southern District of New York in this case in terms of either time or work") (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439 (S.D.N.Y. 2000)). Indeed, the parties in *Does I* have not yet set a schedule for proceedings, as on July 25, 2025, the United States moved for a thirty-day extension of time to determine next steps in the litigation and file its response, and the court granted the motion on July 28, 2025. *See Does I et al. v. United States*, Civ. A. No. 25-80880 (S.D. Fl. 2025) (July 28, 2025, Order, ECF No. 44).

In addition, transferring this action to the Southern District of Florida will avoid unduly prejudicing the United States with concurrent litigations that likely raise overlapping issues of fact and questions of law, lessen the strain on government resources, as well as potentially subject the United States to conflicting rulings or judgments. Judicial economy is best served by transferring this action to the Southern District of Florida so that the case can proceed in an efficient manner.

*   *   *

## CONCLUSION

For the reasons explained herein, the Court should find that venue is improper in this district and transfer this action to the Southern District of Florida.

Dated: July 28, 2025  
Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO  
United States Attorney

By: */s/ Brenda González Horowitz*  
BRENDA GONZÁLEZ HOROWITZ  
D.C. Bar No. 1017243  
ERIKA OBLEA  
Assistant United States Attorneys  
601 D Street, NW  
Washington, DC 20530  
(202) 252-2500 (main)

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA FARMER,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No. 25-1709 (RBW) |

### **[PROPOSED] ORDER**

Upon consideration of Plaintiff's response to the Court's Order to Show Cause (ECF No. 8), Defendant's response thereto and the entire record herein, it is hereby ORDERED that this action is transferred to the Southern District of Florida.

It is further ORDERED that the United States's response deadline is stayed for twenty-one days after the action has been docketed in the Southern District of Florida.

SO ORDERED.

| | |
|---|---|
| _____<br>Dated | _____<br>REGGIE B. WALTON<br>United States District Judge |